# Exhibit A

## SUMMONS

| | |
|---|---|
| Attorney(s) | David K. Inscho |
| Office Address | Kline & Specter, P.C. |
| | 1525 Locust Street |
| Town, State, Zip Code | Philadelphia, PA 19102 |
| Telephone Number | (215) 772-1000 |
| Attorney(s) for Plaintiff | Arthur Baselice, Jr. |

Arthur Baselice, Jr., as Administrator ad Prosequendum and

Administrator of the Estate of Arthur Baselice, III, deceased

Plaintiff(s)

Vs.

Franciscan Friars Assumption BVM Province, Inc., et al.

Defendant(s)

**Superior Court of
New Jersey**

| | |
|---|---|
| Cape May | COUNTY |
| Civil | DIVISION |

Docket No: CPM-L-000483-21

**CIVIL ACTION
SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Clerk of the Superior Court

DATED: _____ 12/09/2021 _____

Name of Defendant to Be Served: Archdiocese of Philadelphia

Address of Defendant to Be Served: 222 N. 17th Street, Philadelphia, PA 19103

RECEIVED
DEC 15 2021
BY:

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

CAPE MAY COUNTY DN - 203
SUPERIOR COURT
9 NORTH MAIN STREET
CAPE MAY CRT HSE NJ 08210-3096

                                        TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (609) 402-0100
COURT HOURS  8:30 AM - 4:30 PM

                        DATE:   NOVEMBER 29, 2021
                        RE:     BASELICE ARTHUR  VS FRANCISCAN FRIARS AS SUMPTION
                        DOCKET: CPM L -000483 21

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON JAMES H. PICKERING JR

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (609) 402-0100 EXT 47713.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:

                                ATT: DAVID K. INSCHO
                                KLINE & SPECTER
                                457 HADDONFIELD RD
                                STE 700
                                CHERRY HILL      NJ 08002

ECOURTS



RECEIVED
DEC 15 2021
BY:

# Civil Case Information Statement

## Case Details: CAPE MAY | Civil Part Docket# L-000483-21

**Case Caption:** BASELICE ARTHUR  VS FRANCISCAN FRIARS AS SUMPTION

**Case Initiation Date:** 11/29/2021

**Attorney Name:** DAVID KEHM INSCHO

**Firm Name:** KLINE & SPECTER

**Address:** 457 HADDONFIELD RD STE 700

CHERRY HILL NJ 08002

**Phone:** 8566621180

**Name of Party:** PLAINTIFF : Baselice, Arthur

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** ASSAULT AND BATTERY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Arthur Baselice?** YES
**Plaintiff's date of birth:** 06/30/1978
**Est. date of first incident of abuse:** 09/01/1992

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO   **Title 59?** NO   **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

11/29/2021
Dated

/s/ DAVID KEHM INSCHO
Signed

# Civil Case Information Statement
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| For Use by Clerk's Office Only | |
|---|---|
| Payment type: ☐ ck ☐ cg ☐ ca | |
| Chg/Ck Number: | |
| Amount: | |
| Overpayment: | |
| Batch Number: | |

| | | |
|---|---|---|
| **Attorney/Pro Se Name**<br>David K. Inscho, Esquire | **Telephone Number**<br>(215) 772-1000 | **County of Venue**<br>Cape May  ☐▼ |
| **Firm Name (if applicable)**<br>Kline & Specter, P.C. | | **Docket Number (when available)** |
| **Office Address**<br>1525 Locust Street<br>Philadelphia, PA 19102 | | **Document Type**<br>Civil Action Complaint |
| | | **Jury Demand**  ■ Yes  ☐ No |

| | |
|---|---|
| **Name of Party (e.g., John Doe, Plaintiff)**<br>Arthur Baselice, Jr., as Adm. ad Prosecundum and Adm. of the Est. of Arthur Baselice, III, deceased | **Caption**<br>Arthur Baselice Jr., as Adm. ad Prosequndum and Adm. of the Est. of Arthur Baselice, III, deceased vs. Franciscan Friars Assumption BVM Province, Inc., et al. |

| | | |
|---|---|---|
| **Case Type Number**<br>(See reverse side for listing)<br>602 | **Are sexual abuse claims alleged?**<br>■ Yes  ☐ No | **Is this a professional malpractice case?**  ☐ Yes  ■ No<br>If you have checked "Yes," see *N.J.S.A.* 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. |

| **Related Cases Pending?**<br>☐ Yes  ■ No | **If "Yes," list docket numbers** |
|---|---|

| **Do you anticipate adding any parties**<br>(arising out of same transaction or occurrence)?<br>☐ Yes  ■ No | **Name of defendant's primary insurance company (if known)**<br>☐ None<br>■ Unknown |
|---|---|

**The Information Provided on This Form Cannot be Introduced into Evidence.**

**Case Characteristics for Purposes of Determining If Case Is Appropriate for Mediation**

| **Do parties have a current, past or recurrent relationship?**<br>☐ Yes  ■ No | **If "Yes," is that relationship:**<br>☐ Employer/Employee  ☐ Friend/Neighbor  ☐ Other (explain)<br>☐ Familial  ☐ Business |
|---|---|

| **Does the statute governing this case provide for payment of fees by the losing party?**  ☐ Yes  ■ No |
|---|

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition**

RECEIVED
DEC 15 2021
BY:

| **Do you or your client need any disability accommodations?**<br>☐ Yes  ■ No | **If yes, please identify the requested accommodation:** |
|---|---|
| **Will an interpreter be needed?**<br>☐ Yes  ■ No | **If yes, for what language?** |

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).**

Attorney Signature: *2. ~~~*

**KLINE & SPECTER, P.C.**
BY:  David K. Inscho, Esquire, NJ ID# 26322002
        Lorraine H. Donnelly, Esquire, NJ ID# 177872016
1525 Locust Street, Nineteenth Floor
Philadelphia, PA 19102
(215) 772-1000
David.inscho@klinespecter.com
Lorraine.donnelly@klinespecter.com
*Attorneys for Plaintiff*

| | | |
|---|---|---|
| Arthur Baselice Jr., as<br>Administrator ad Prosequendum<br>And Administrator of the Estate of<br>Arthur Baselice, III, Deceased<br>170 Victoria Avenue<br>Mantua, New Jersey 08051 | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: | **SUPERIOR COURT OF NEW JERSEY**<br>**CAPE MAY COUNTY** |
| Plaintiff, | : <br>: <br>: | **LAW DIVISION**<br>**DOCKET NO.** |
| Franciscan Friars Assumption BVM<br>Province, Inc.<br>9230 West Highland Park Avenue<br>Franklin, Wisconsin 53132-8143 | : <br>: <br>: <br>: <br>: | |
| v. | : <br>: <br>: | **CIVIL ACTION COMPLAINT** |
| Archdiocese of Philadelphia<br>222 N. 17th Street<br>Philadelphia, Pennsylvania 19103 | : <br>: <br>: <br>: <br>: | **JURY TRIAL DEMANDED** |
| and | : <br>: | |
| Charles Newman<br>SS. Francis and Clare Friary<br>9230 W. Highland Park Avenue<br>Franklin, Wisconsin 53132 | : <br>: <br>: <br>: <br>: | |
| and | : <br>: <br>: | |
| ABC CORPORATIONS, ONE<br>THROUGH TEN<br>(said Names Being Fictitious) | : <br>: <br>: <br>: <br>: | |
| and | : <br>: | |

1

| | |
|---|---|
| JOHN DOE, ONE | : |
| THROUGH TEN | : |
| (said Names Being Fictitious) | : |
| | : |
| Defendants. | : |

---

### CIVIL ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Arthur Baselice, Jr., by and through his undersigned counsel, Kline & Specter,

hereby files this Complaint, and complains of the above captioned Defendants as follows:

### PARTIES AND VENUE

1.     Plaintiff, Arthur Baselice Jr., is a resident of the State of New Jersey residing therein

at 170 Victoria Avenue, Mantua, New Jersey 08051. Arthur Baselice Jr., is the duly appointed

Administrator ad Prosequendum and Administrator of the Estate of Arthur Baselice, III (Herein

"Plaintiff's decedent"), deceased, having been so appointed by the Gloucester County Surrogate's

Court.   (See Administration Short Certificate at Exhibit "A" and Administration Ad Pros Short

Certificate at Exhibit "B").

2.     Plaintiff's decedent, Arthur Baselice III, died intestate on November 30, 2006.

3.     Plaintiff's decedent is survived by his child Anthony Millar, and his Parents,

Plaintiff, Arthur Baselice Jr., and his mother, Elaine Baselice.

4.     Defendant Father Charles Newman is a resident of the state of Wisconsin, residing

therein at SS. Francis and Clare Friary, 9230 W. Highland Park Avenue, Franklin, Wisconsin

53132.

5.     Defendant   Franciscan   Friars   Assumption   BVM   Province,   Inc.   (herein

"Franciscans"), continues to be a non-profit corporation organized under the laws of the State of

Wisconsin with an office located at 9230 West Highland Park Avenue, Franklin, Wisconsin 53132-

2

8143.  The Franciscans are a religious order that among other things, owns and operates friaries and supplies Roman Catholic priests to staff Roman Catholic Schools and perform other ministries for Roman Catholic dioceses, throughout the United States.

6.      At all times relevant hereto, Defendant Father Charles Newman was a servant or agent of the Defendant Franciscans, working for them as a priest, missionary, teacher, and school principal, including his work at Archbishop Ryan High School, and acting within the scope of his aforementioned legal relationship with the Defendant Franciscans.  Accordingly, the Defendant Franciscans are liable vicariously and derivatively for the acts of Father Charles Newman under theories of respondeat superior, master-servant, agency, and/or right of control.

7.      At all times relevant hereto, the Defendant Archdiocese of Philadelphia ("Archdiocese") was and continues to be a Roman Catholic organization and a non-profit religious corporation authorized to conduct business in the Commonwealth of Pennsylvania with its principal place of business located at 222 N. 17th Street, Philadelphia, Pennsylvania 19103.

8.      At all times relevant hereto, Defendant Father Charles Newman was a servant or agent of the Defendant Archdiocese, working therein as a priest, missionary, teacher, and school principal, including his work at Archbishop Ryan High School, and acting within the scope of his aforementioned legal relationship with the Defendant Archdiocese.  Accordingly, the Defendant Archdiocese is liable vicariously and derivatively for the acts of Newman under theories of respondeat superior, master-servant, agency, and/or right of control.

9.      At all times relevant hereto, the Defendant Archdiocese was acting by and through its employees, servants, and agents, in the operation of the Defendant Archdiocese and the hiring, admitting, assigning, retaining, and supervising of priests, teachers, and principals, including Newman.  Accordingly, the Defendant Archdiocese is liable vicariously and derivatively for the negligent acts and omissions of these employees, servants, and agents while engaged in the

3

operation of the Archdiocese of Philadelphia and the hiring, admitting, assigning, retaining, and supervising of priests, including Newman, under theories of respondeat superior, master-servant, agency, and/or right of control.

10.     At all times relevant hereto, The Defendant Archdiocese owned and operated Archbishop Ryan High School in Northeast Philadelphia.

11.     Defendants named in the above caption as John Doe, One through Ten (said names being fictitious, and hereinafter referred to as "John Doe"), were, at all relevant times, employees and/or agents of the Defendant Archdiocese and/or Franciscans involved in the operation of those entities and/or Archbishop Ryan High School and the hiring, admitting, assigning, retaining, and supervising of priests, teachers and principals, including Newman.   The identification of these individuals is not known to Plaintiff at this time in the absence of discovery.   Plaintiff reserves the right to substitute the name(s) for those agents designated as John Doe when and if such information becomes available.

12.     Defendants ABC Corporations, One through Ten (said names being fictitious, and hereinafter referred to as "ABC") are incorporated associations, corporations, or other jural entities that employed the Defendants at all relevant times.   These corporations or other jural entities are vicariously and derivatively liable for the negligent conduct of the aforementioned Defendants under the theories of respondeat superior, master-servant, agency, and/or right of control.

13.     At all relevant times, all Defendants in this action were acting by and through themselves in their individual capacities, and/or additionally by and through their actual and/or ostensible agents, servants, employees, which included entities and/or individuals over whom they had control or right of control.

14.     Venue is properly laid in the Superior Court of Cape May County, New Jersey pursuant to R. 4:3-2(a) and (b).

CPM-L-000483-21  11/29/2021 4:06:07 PM  Pg 6 of 25 Trans ID: LCV20212780528

## FACTS GIVING RISE TO THE ACTION

15.     For decades, both before and following the abuse of the Plaintiff's decedent, the
Defendant Archdiocese repeatedly and systematically facilitated the sexual abuse of children by
clergy members through a pattern of ignoring and minimizing complaints about priests,
intentionally failing to investigate priests that had abused children, failing to report the sexual
abuse of its clergy to law enforcement, and transferring priests who had sexually abused children
to avoid scandal rather than protect children.

16.     In 2005, a Philadelphia Grand Jury issued a more than 400-page scathing report
regarding the Defendant Archdiocese's handling of pedophile priests.  The report stated that the
Grand Jury was able to document abuse by at least 63 different priests in the Defendant
Archdiocese of Philadelphia with hundreds of child victims of these sexual offenders.  With regard
to the Defendant Archdiocese's handling of sexual abuse the Grand Jury found:

> [I]n its callous, calculating manner, the Archdiocese's "handling" of
> the abuse scandal was at least as immoral as the abuse itself. The
> evidence before us established that Archdiocese officials at the
> highest levels received reports of abuse; that they chose not to
> conduct any meaningful investigation of those reports; that they left
> dangerous priests in place or transferred them to different parishes
> as a means of concealment; that they never alerted parents of the
> dangers posed by these offenders (who typically went out of their
> way to be friendly and helpful, especially with children); that they
> intimidated and retaliated against victims and witnesses who came
> forward about abuse; that they manipulated "treatment" efforts in
> order to create a false impression of action; and **that they did many
> of these things in a conscious effort simply to avoid civil liability.**

*See* Report of Philadelphia County Investigating Grand Jury, Phila. C.C.P. Misc. No. 03-00-239,
at p. 4 (Sept. 15, 2005) (emphasis added.)

17.     Plaintiff's decedent was raised in a devout Christian, Roman Catholic family,

whose members regularly attended and participated in the celebration of mass, and fulfilled their obligations of financial and other support to the Archdiocese.

18.     Plaintiff's decedent was born on or about June 30, 1978.  He died on November 30, 2006.

19.     Starting in 1992, Plaintiff's decedent began attending Archbishop Ryan High School.

20.     While attending Archbishop Ryan High School, Plaintiff met Father Newman.

21.     Father Newman was a Roman Catholic Priest and member of the Order of Friars Minor, otherwise known as the Franciscan Friars.  Father Newman was assigned by the Franciscans to perform ministry in the Archdiocese of Philadelphia, and specifically at Archbishop Ryan High School.

22.     Father Newman befriended Plaintiff in the hallways during Plaintiff's freshman year at Archbishop Ryan H.S. even though Plaintiff's decedent was not in any of Father Newman's classes.

23.     Based on his upbringing, Plaintiff's decedent revered and respected Father Newman. Father Newman used his position as a priest and teacher, and later as the principal of Archbishop Ryan High School to groom Plaintiff's decedent to allow him to sexually abuse him.

24.     During Plaintiff's decedent's Sophomore year, Father Newman became the principal of Archbishop Ryan High School.

25.     During Plaintiff's sophomore year, Father Newman routinely removed Plaintiff's decedent from his classes and brought him to the principal's office with him talking about grades and his family.

6

26. In the Principal's officer, Father Newman permitted Plaintiff's decedent to chew tobacco, swear and engage in other practices that were prohibited by the code of conduct of Archbishop Ryan High School.

27. Father Newman also began manipulating Plaintiff's decedent's grades at Archbishop Ryan High School to ensure that he did not have to go to summer school; this practice continued up until Plaintiff's decedent graduated.

28. Father Newman also interceded on Plaintiff's decedent behalf when misbehaved in class and prevented Plaintiff's decedent from getting punished and took away demerits.

29. Father Newman began to call Plaintiff's decedent "stud" and continued to do so throughout his relationship with him.

30. During Plaintiff's decedent's junior year at Archbishop Ryan H.S., Newman had Plaintiff's decedent meet him at the Pius X Friary in Northeast Philadelphia after school.

31. Newman gave Plaintiff's decedent alcohol and proceeded to fondle him and perform oral sex on him. Plaintiff's decedent was sixteen years old at the time of this abuse. Following the initial incident of abuse, Father Newman gave Plaintiff's decedent $300 in cash.

32. Over the next two years, Father Newman repeatedly sexual abused Plaintiff's decedent by masturbating Plaintiff's decedent and/or watching Plaintiff's decedent masturbate himself while Plaintiff's decedent viewed pornographic videos that Father Newman had supplied; preforming oral sex on Plaintiff and requiring Plaintiff to masturbate him.

33. On each occasion that he sexually abused Plaintiff's decedent, Father Newman would supply Plaintiff's decedent with alcohol and/or illegal controlled substances, thereby causing him to become intoxicated.

34.     Father Newman routinely masturbated Plaintiff and/or watched Plaintiff masturbate himself while Plaintiff viewed pornographic videos that Father Newman had supplied for him. Father Newman routinely performed oral sex on Plaintiff and required Plaintiff to masturbate him.

35.     On at least one occasion, Father Newman required Plaintiff to urinate on him.

36.     In 1995, following Plaintiff's decedent's junior year in high school, Plaintiff's decedent owned a condominium in Wildwood, New Jersey for the summer. During the summer, Plaintiff's decedent's mother would live full time in Wildwood.

37.     During the summer of 1995, Plaintiff's decedent would stay at home during the week and come to Wildwood on weekends.

38.     Father Newman offered to drive Plaintiff's decedent from Northeast Philadelphia to Wildwood.

39.     Being devout Catholics and trusting Father Newman based on his position with Franciscans and Archdiocese of Philadelphia, Plaintiff's decedent's parents allowed Newman to transport Plaintiff's decedent to New Jersey.

40.     Father Newman abused Plaintiff's decedent during multiple trips to the Wildwood New Jersey in his car, including masturbating him and performing oral sex on him.

41.     Toward the end of Plaintiff's Senior year in High School, Father Newman obtained consent from Plaintiff's parents to take Plaintiff to Colorado to attend a hockey playoff game in Denver.

42.     Father Newman sexually abused Plaintiff during this trip, provided him with alcohol and never took him to a hockey game.

43.     As a result of the abuse and the provision of illegal drugs and alcohol to groom him, Father Newman caused Plaintiff's decedent to become addicted to illegal drugs and alcohol.

44.     By Plaintiff's decedent's senior year at Archbishop Ryan, Father Newman not only continued to supply alcohol and illegal controlled substances to Plaintiff; he also began giving money to Plaintiff so that Plaintiff could purchase drugs from drug dealers.

45.     Father Newman accompanied Plaintiff to a bar where he assisted Plaintiff in purchasing illegal controlled substances.

46.     Father Newman's sexual abuse of Plaintiff continued after Plaintiff graduated Archbishop Ryan in 1996 until Plaintiff, shortly after graduation, led Father Newman to believe that he had a venereal disease in order to discourage Father Newman's continued sexual abuse of him.

47.     Even after his sexual abuse of Plaintiff ended in 1996, Father Newman continued to supply Plaintiff with money to purchase illegal controlled substances and/or pay off debts.

48.     For example, in December 2002, Father Newman gave Plaintiff a check in the amount of $10,800.00 and in January 2003 he gave Plaintiff a check in the amount of $32,000.00.

49.     Father Newman continued to supply money to Plaintiff as aforesaid until November 2003.

50.     In 2003, the Archdiocese learned that Father Newman had been misappropriating funds from Archbishop Ryan High School and began investigating Father Newman's conduct.

51.     From November 21, 2003 until March 12, 2004, Newman was placed by the Defendants in a residential treatment program.   After being released from the treatment program he returned to live at the Franciscan Friary in Wisconsin.

52.     In January of 2004, Plaintiff's decedent provided sworn testimony regarding the abuse by Father Newman.

53.     In May of 2009, Father Newman, was sentenced to 3-6 years in prison after pleading guilty to one count of theft and two counts of theft by unlawful disposition related to

9

money he stole from the Archbishop Ryan High School and the Franciscans which he had used, in part, to groom and abuse Plaintiff's decedent.

54.     Despite the foregoing, in November 2009, it was determined by the Congregation of the Doctrine of the Faith, the Roman Catholic entity responsible for punishment and removal of priests from the priesthood, that Father Newman would remain a member of the Franciscans and a priest in the Roman Catholic Church.

55.     In 2014, Father Newman was released from incarceration and his parole supervision was transferred to Wisconsin to allow him to return to live at the Franciscans friary.

56.     Plaintiff's decedent continued to battle the addiction to illegal drugs that Newman's abuse had caused and was further facilitated by Newman's providing drugs and money for drugs to the Plaintiff's decedent.

57.     On November 30, 2006, Plaintiff's decedent died as a result of drug overdose.

58.     As set forth more fully below, the conduct of Defendants, caused an increased risk of harm and/or was a substantial contributing causal factor that resulted in Plaintiff's decedent's suffering, harm and death and resulting damages, which include, but are not limited to, the following:

      a.      Pain and suffering;

      b.      Mental anguish;

      c.      Fear and fright;

      d.      Emotional distress;

      e.      Substance use disorder and addiction,

      f.      Medical expenses;

      g.      Death;

      h.      Mental anguish;

CPM-L-000483-21   11/29/2021 4:06:07 PM  Pg 12 of 25 Trans ID: LCV20213780528

i.      Embarrassment;

j.      Disfigurement;

k.      Humiliation;

l.      Loss of life's pleasures;

m.      Lost wages;

n.      Loss of earning capacity;

o.      Loss of consortium;

p.      Loss of guidance;

q.      Loss of tutelage;

r.      Loss of care and support;

s.      Loss of society;

t.      Loss of companionship;

u.      Loss of advice and counsel;

v.      All damages as set forth in greater detail in the medical records;

w.      All damages under the Wrongful Death statute, N.J.S.A. 2A:31-4; and

x.      All damages under the Survival statute, N.J.S.A. 2A:15-3.

59.     The injuries and resulting death of Plaintiff's decedent were caused solely and exclusively by the negligence of all Defendants and were due in no manner whatsoever by any act or failure to act on the part of Plaintiff or Plaintiff's decedent.

## COUNT I – VICARIOUS LIABILIY

### Plaintiff John Doe 1 v. Defendants Archdiocese, Franciscans,

### John Doe, One through Ten, and ABC Corporations, One through Ten

60.     The previous paragraphs are incorporated herein by reference.

11

61.     The Defendants Archdiocese and Franciscans are vicariously liable for Newman's sexual abuse of Plaintiff's decedent because Newman was actually, ostensibly, or apparently acting in the course and scope of his role as a priest, missionary, teacher, and/or school principal, with the Defendants Archdiocese and Franciscans and there was reliance upon his position with the Defendant Archdiocese by Plaintiff's decedent and his family which facilitated the abuse, and moreover, Newman was aided in commission of the abuse by his positions with Defendants Archdiocese and Franciscans.

62.     Defendants Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten are liable for the conduct of any and all agents, ostensible agents, servants, and/or employees described herein pursuant to principles of agency, vicarious liability, and/or *respondeat superior*.

63.     The actions and/or omissions of Defendants Archdiocese of Philadelphia, Franciscans, John Doe, One through Ten, and ABC Corporations, One through Ten, and their agents, servants, and/or employees, including, but not limited to, Newman, and others who are known to Defendants herein and unknown to Plaintiff, were a factual cause of and/or placed Plaintiff's decedent at an increased risk of harm for and/or was a substantial factor in causing Plaintiff's decedent's injuries and death.

64.     Accordingly, Defendants are liable for the full measure of damages allowable by law, which are recoverable pursuant to the New Jersey Wrongful Death Act and Survival Act Statutes, which include but are not limited to:

a.     damages and costs of suit recoverable under N.J.S.A. 2A:15-3;

b.     damages and costs of suit recoverable by Arthur Baselice, III had he lived under N.J.S.A. 2A:31-1;

12

    c.    compensatory and other damages under the New Jersey Wrongful Death Act 2A:31-4 and Survival Act 2A:15-3;

    d.    damages to compensate for the support Arthur Baselice, III's beneficiary or beneficiaries would have received during Arthur Baselice, III's lifetime had he survived to his normal life expectancy or beyond;

    e.    medical, funeral, and other expenses incurred on behalf of Arthur Baselice, III; and

    f.    all other damages and relief cognizable under the laws of the State of New Jersey, and as deemed necessary and equitable by the Court and/or the jury presiding over this case.

**WHEREFORE**, Plaintiff, demands judgment against Defendants Archdiocese of Philadelphia, Franciscans John Doe, One through Ten, and ABC Corporations, One through Ten, in an amount in excess of the local arbitration rules, exclusive of prejudgment interest, costs and damages for pre-judgment delay, and such other legal and equitable relief as the Court deems appropriate.

## COUNT II - NEGLIGENCE

### Plaintiff v. Defendants Archdiocese, Franciscans, and Father Newman

### <u>John Doe, One through Ten, and ABC Corporations, One through Ten</u>

65.    The previous paragraphs are incorporated herein by reference.

66.    The recklessness, negligence and/or carelessness of Defendants Archdiocese of Philadelphia and Franciscans, including the conduct of Newman, all of its other clergy, agents and administrators, and John Doe, One through Ten, and ABC Corporations, One through Ten, by and through their actual or apparent agents, servants, and/or employees, consisted of, among other things, the following:

a.   Recklessly, negligently and/or carelessly failing to observe and supervise the relationship between Plaintiff's decedent and Newman;

b.   Recklessly, negligently and/or carelessly failing to have policies and procedures to require supervision and observation of the relationship between Plaintiff's decedent and Newman;

c.   Recklessly, negligently and/or carelessly failing to recognize Newman's conduct described herein as creating a risk of sexual abuse of children;

d.   Recklessly, negligently and/or carelessly failing to have policies and procedures to require supervision and observation of Plaintiff's decedent and Newman;

e.   Recklessly, negligently and/or carelessly failing to identify Newman as a sexual abuser;

f.   Recklessly, negligently and/or carelessly failing to investigate the behavior of Newman that put the Defendants on notice that Newman was a potential pedophile and child abuser;

g.   Recklessly, negligently, and/or carelessly failing to respond to investigate Newman's prior sexual abuse of children;

h.   Recklessly allowing Newman to continue in ministry, mission work, and teaching despite knowing of his intentions and history of abusing boys;

i.   Recklessly allowing Newman to continue in ministry, mission work, and teaching despite knowing of his history of sexual deviate conduct and desires with teenage boys;

j.   Recklessly promoting Newman to the position of principal giving even more authority and power over children;

k.   Failure to use due care under the circumstances; and

l.   Negligence as may be proven from facts now exclusively in the possession of Defendants, which may be ascertained after the filing of this Complaint.

67.   The negligence of Defendants was a substantial contributing factor causing Plaintiff's decedent, Arthur Baselice, III's injuries and death.

68.     The negligence of Defendants increased the risk of harm to Plaintiff's decedent, Arthur Baselice, III.

69.     As a direct and proximate result of the negligence of Defendants, Plaintiff's decedent, Arthur Baselice, III, suffered injuries and death.

70.     As a direct and proximate result of the negligence of Defendants and the injuries and resulting death of Plaintiff's decedent, Arthur Baselice, III, Plaintiff and Plaintiff's decedent's Estate are entitled to recover damages pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-4, and the New Jersey Survival Act, N.J.S.A. 2A:15-3.

71.     Accordingly, Defendants are liable for the full measure of damages allowable by law, which are recoverable pursuant to the New Jersey Wrongful Death Act and Survival Act Statutes, which include but are not limited to:

a.     damages and costs of suit recoverable under N.J.S.A. 2A:15-3;

b.     damages and costs of suit recoverable by Arthur Baselice, III had he lived under N.J.S.A. 2A:31-1;

c.     compensatory and other damages under the New Jersey Wrongful Death Act 2A:31-4 and Survival Act 2A:15-3;

d.     damages to compensate for the support Arthur Baselice, III's beneficiary or beneficiaries would have received during Arthur Baselice, III's lifetime had he survived to his normal life expectancy or beyond;

e.     medical, funeral, and other expenses incurred on behalf of Arthur Baselice, III; and

f.     all other damages and relief cognizable under the laws of the State of New Jersey, and as deemed necessary and equitable by the Court and/or the jury presiding over this case.

WHEREFORE, Plaintiff, demands judgment against Defendants Archdiocese of Philadelphia, Franciscans , Father Newman, John Doe, One through Ten, and ABC Corporations, One through Ten, in an amount in excess of the local arbitration rules, exclusive of prejudgment interest, costs and damages for pre-judgment delay, and such other legal and equitable relief as the Court deems appropriate.

## COUNT III - NEGLIGENT SUPERVISION
### Plaintiff John Doe 1 v. Defendants Archdiocese, Franciscans, John Doe, One through Ten, and ABC Corporations, One through Ten

72.    The previous paragraphs are incorporated herein by reference.

73.    Defendants Archdiocese of Philadelphia, Franciscans, John Doe, One through Ten, and ABC Corporations, One through Ten, knew or should have known of the need to supervise priests in their relationships with young children.

74.    Defendants Archdiocese of Philadelphia, Franciscans, John Doe, One through Ten, and ABC Corporations, One through Ten, knew or should have known of the particular risk posed by Newman based on, among other things, his history of sexually abusing children, and his behavior indicative of an intent to isolate, groom, and facilitate sexually abusing boys.

75.    The negligence and recklessness of Defendants Archdiocese of Philadelphia, Franciscans, John Doe, One through Ten, and ABC Corporations, One through Ten, for the conduct of their actual or apparent agents, servants, and/or employees, in the supervision of Newman consists of one or more of the following:

    a.    Failing to use due care in supervising Newman's relationship with Plaintiff's decedent; and

16

      b.     Failing to investigate and supervise the relationship between Plaintiff's decedent and Newman in light of reports that Newman had sexually abused other young boys prior to abusing Plaintiff's decedent.

76.    The negligent supervision of Defendants was a substantial contributing factor causing Plaintiff's decedent, Arthur Baselice, III's injuries and death.

77.    The negligent supervision of Defendants increased the risk of harm to Plaintiff's decedent, Arthur Baselice, III.

78.    As a direct and proximate result of the negligent supervision of Defendants, Plaintiff's decedent, Arthur Baselice, III, suffered injuries and death.

79.    As a direct and proximate result of the negligent supervision of Defendants and the injuries and resulting death of Plaintiff's decedent, Arthur Baselice, III, Plaintiff and Plaintiff's decedent's Estate are entitled to recover damages pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-4, and the New Jersey Survival Act, N.J.S.A. 2A:15-3.

80.    Accordingly, Defendants are liable for the full measure of damages allowable by law, which are recoverable pursuant to the New Jersey Wrongful Death Act and Survival Act Statutes, which include but are not limited to:

      a.     damages and costs of suit recoverable under N.J.S.A. 2A:15-3;

      b.     damages and costs of suit recoverable by Arthur Baselice, III had he lived under N.J.S.A. 2A:31-1;

      c.     compensatory and other damages under the New Jersey Wrongful Death Act 2A:31-4 and Survival Act 2A:15-3;

      d.     damages to compensate for the support Arthur Baselice, III's beneficiary or beneficiaries would have received during Arthur Baselice, III's lifetime had he survived to his normal life expectancy or beyond;

e. medical, funeral, and other expenses incurred on behalf of Arthur Baselice, III; and

f. all other damages and relief cognizable under the laws of the State of New Jersey, and as deemed necessary and equitable by the Court and/or the jury presiding over this case.

**WHEREFORE**, Plaintiff, demands judgment against Defendants Archdiocese of Philadelphia, Franciscans, John Doe, One through Ten, and ABC Corporations, One through Ten, in an amount in excess of the local arbitration rules, exclusive of prejudgment interest, costs and damages for pre-judgment delay, and such other legal and equitable relief as the Court deems appropriate.

## COUNT IV - NEGLIGENT HIRING AND RETENTION
### Plaintiff v. Defendants Archdiocese, Franciscans,
### John Doe, One through Ten, and ABC Corporations, One through Ten

81.    The previous paragraphs are incorporated herein by reference.

82.    Defendants Archdiocese, Franciscans, John Doe, One through Ten, and ABC Corporations, One through Ten, knew or should have known prior to the time of Plaintiff's decedent's abuse that Plaintiff's decedent and other young children in its church were vulnerable and potential victims of sexual abuse.

83.    Defendants Archdiocese, Franciscans John Doe, One through Ten, and ABC Corporations, One through Ten, also knew or should have known prior to the abuse of Plaintiff's decedent that the access to vulnerable youths and the trust and authority placed in clergy and in teachers and principals makes those positions enticing vocations to pedophiles and others seeking to abuse and exploit children.

18

84.     Defendants Archdiocese, Franciscans, John Doe, One through Ten, and ABC Corporations, One through Ten, owed a duty to exercise reasonable care in the selection and retention of Father Newman as a priest, missionary, teacher, and school principal, and specifically a duty to remain vigilant with respect to possible pedophiles and others seeking to abuse and exploit children.

85.     Defendants Archdiocese of Philadelphia, Franciscans John Doe, One through Ten, and ABC Corporations, One through Ten, failed to exercise reasonable care in the selection of and retention of Newman as a priest, by among other things, the following:

a.      Failing to investigate and respond to Newman's history of sexual impropriety with young boys and his proclivity to sexual assault young boys;

b.      Failing to investigate whether Newman had any inappropriate sexual interest in young boys;

c.      Failing to use due care in the selection of Newman as a priest, missionary, teacher and principal interacting with children; and,

d.      Failing to use due care in the retention of Newman as a priest, missionary, teacher and principal ministering and providing clerical service to vulnerable children.

86.     The negligent hiring and retention of Newman by Defendants was a substantial contributing factor causing Plaintiff's decedent, Arthur Baselice, III's injuries and death.

87.     The negligent hiring and retention of Newman by Defendants increased the risk of harm to Plaintiff's decedent, Arthur Baselice, III.

88.     As a direct and proximate result of the negligent hiring and retention of Newman by Defendants, Plaintiff's decedent, Arthur Baselice, III, suffered injuries and death.

19

89.    As a direct and proximate result of the negligent hiring and retention of Newman by Defendants and the injuries and resulting death of Plaintiff's decedent, Arthur Baselice, III, Plaintiff and Plaintiff's decedent's Estate are entitled to recover damages pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-4, and the New Jersey Survival Act, N.J.S.A. 2A:15.

90.    Accordingly, Defendants are liable for the full measure of damages allowable by law, which are recoverable pursuant to the New Jersey Wrongful Death Act and Survival Act Statutes, which include but are not limited to:

    a.    damages and costs of suit recoverable under N.J.S.A. 2A:15-3;

    b.    damages and costs of suit recoverable by Arthur Baselice, III had he lived under N.J.S.A. 2A:31-1;

    c.    compensatory and other damages under the New Jersey Wrongful Death Act 2A:31-4 and Survival Act 2A:15-3;

    d.    damages to compensate for the support Arthur Baselice, III's beneficiary or beneficiaries would have received during Arthur Baselice, III's lifetime had he survived to his normal life expectancy or beyond;

    e.    medical, funeral, and other expenses incurred on behalf of Arthur Baselice, III; and

    f.    all other damages and relief cognizable under the laws of the State of New Jersey, and as deemed necessary and equitable by the Court and/or the jury presiding over this case.

**WHEREFORE**, Plaintiff, demands judgment against Defendants Archdiocese, Franciscans, John Doe, One through Ten, and ABC Corporations, One through Ten, in an amount in excess of the local arbitration rules, exclusive of prejudgment interest, costs and damages for pre-judgment delay, and such other legal and equitable relief as the Court deems appropriate.

## COUNT V – ASSAULT AND BATTERY
### Defendant Father Charles Newman

91.     The previous paragraphs are incorporated herein by reference.

92.     The aforementioned conduct by Newman inflicted upon Plaintiff's decedent as described herein constitutes sexual assault and physical battery.

93.     As a result of Newman's repeated acts of sexual assault and physical battery, Plaintiff's decedent  was caused to suffer painful physical, metal, and emotional harm and death as outlined above.

94.     As a direct and proximate result of the sexual assault and battery by  Newman and the injuries and resulting death of Plaintiff's decedent, Arthur Baselice, III, Plaintiff and Plaintiff's decedent's Estate are entitled to recover damages pursuant to the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-4, and the New Jersey Survival Act, N.J.S.A. 2A:15-3.

95.     Accordingly, Defendant Newman are liable for the full measure of damages allowable by law, which are recoverable pursuant to the New Jersey Wrongful Death Act and Survival Act Statutes, which include but are not limited to:

   a.      damages and costs of suit recoverable under N.J.S.A. 2A:15-3;

   b.      damages and costs of suit recoverable by Arthur Baselice, III
           had he lived under N.J.S.A. 2A:31-1;

   c.      compensatory and other damages under the New Jersey
           Wrongful Death Act 2A:31-4 and Survival Act 2A:15-3;

21

    d.    damages to compensate for the support Arthur Baselice, III's beneficiary or beneficiaries would have received during Arthur Baselice, III's lifetime had he survived to his normal life expectancy or beyond;

    e.    medical, funeral, and other expenses incurred on behalf of Arthur Baselice, III; and

    f.    all other damages and relief cognizable under the laws of the State of New Jersey, and as deemed necessary and equitable by the Court and/or the jury presiding over this case.

**WHEREFORE**, Plaintiff, demands judgement in his favor and damages, including punitive damages, against Defendant, in an amount in excess of the local arbitration rules, exclusive of prejudgment interest, costs and damages for pre-judgment delay, and such other legal and equitable relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all counts and causes of action and all issues raised by this Complaint.

## DESIGNATED TRIAL COUNSEL

Pursuant to Rule 4:25-4, David K. Inscho, Esquire is hereby designated as trial counsel for Plaintiff.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to 4:10-2(b) demand is hereby made that you disclose to the undersigned whether there are any additional insurance agreements or policies, other than those previously disclosed, under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnity or reimburse for payments made to satisfy the judgment.

If additional or different insurance coverage has been provided liable to satisfy part or all of a judgment which may be entered in the action or to indemnity or reimburse for payments made to satisfy the judgment, you are hereby requested to attach a copy of each or in the alternative, state under oath or certification (a) policy number; (b) name and address of insurer or issuer; (c) inception and expiration date; (d) names and addresses of all persons thereunder; (e) personal injury limits; (f) property damage limits; (g) medical payment limits.

## NOTICE PURSUANT TO RULES 1:5-1(a) and 4:17-4(c)

**TAKE NOTICE** that the undersigned attorney hereby demands that each party herein serving pleadings and interrogatories and receiving answer thereto serve copies of all such pleadings and answered interrogatories received from any party upon the undersigned and **TAKE NOTICE** that this is a continuing demand.

## CERTIFICATION

I hereby certify that to my knowledge the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated nor are there any other necessary parties.

**KLINE & SPECTER**

BY:  *David K. Inscho /s/*
     DAVID K. INSCHO, ESQUIRE
     LORRAINE H. DONNELLY, ESQUIRE
     *Attorneys for Plaintiff*

Date:   November 29, 2021

# State of New Jersey
# Gloucester County Surrogate's Court

In the Matter of the Estate of
**Arthur J. Baselice III,** Deceased

**ADMINISTRATION
SHORT CERTIFICATE**

**Docket Number: 20-00307**

I, **Giuseppe Chila,** Surrogate of the County of **Gloucester,** do certify that Letters of Administration of the decedent, intestate, late of **Gloucester** County, on **February 24, 2020,** were granted by the **Gloucester** County Surrogate's Court to **Arthur Baselice, Jr.** who is (are) duly authorized to administer the same agreeably to law; and I further certify that said letters as appears from the records of this Court have never been revoked and still remain in full force and effect.

WITNESS my hand and seal of office, this
**24th day of February, 2020**

_____
**Giuseppe Chila, Surrogate**

By_____
DEPUTY SURROGATE

# EXHIBIT "B"

# State of New Jersey
# Gloucester County Surrogate's Court

In the Matter of the Estate of
**Arthur J. Baselice III,** Deceased

**ADMINISTRATION AD
PROSEQUENDUM
SHORT CERTIFICATE**

**Docket Number: 20-00307**

I, **Giuseppe Chila,** Surrogate of **Gloucester** County and State of **New Jersey,** do certify that on this **24th day of February, 2020,** Letters of Administration Ad Prosequendum were granted by me to **Arthur Baselice, Jr.** who is(are) authorized to bring an action, institute a proceeding or make a claim in decedent's name as such Administrator(s) Ad Prosequendum concerning the alleged Wrongful death of **Arthur J. Baselice III,** deceased, as in the Statute such case provided.

THIS CERTIFICATE CANNOT BE USED TO TRANSFER ESTATE ASSETS.

I further certify that said Letters of Administration Ad Prosequendum remain in full force and effect.

WITNESS my hand and seal of office,
this **24th day of February, 2020.**

**Giuseppe Chila, Surrogate**

By
DEPUTY SURROGATE

**Admin Ad Proseq Certificate**